GROWERS OUTLET, INC. *vs.* HENRY E. STONE.

Hampden.    September 22, 1955. — January 6, 1956.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Contract,* Of employment, Performance and breach. *Equity Jurisdiction,* Declaratory relief. *Declaratory Judgment. Equity Pleading and Practice,* Injunction, Counterclaim, Declaratory proceeding, Amendment. *Frauds, Statute of. Practice, Civil,* Exceptions: whether error shown; Requests, rulings and instructions. *Error,* Whether error shown. *Evidence,* Relevancy and materiality.

In a suit in equity for a declaratory decree as to the rights of the parties under a contract of employment, a preliminary injunction prohibiting the defendant from bringing or prosecuting any proceeding against the plaintiff for breach of the contract was impliedly revoked by the overruling of a demurrer, grounded on the injunction, filed by the plaintiff to a counterclaim of the defendant seeking damages for alleged breach of the contract by the plaintiff.    [440–441]

A counterclaim seeking damages for alleged breach of a contract by the plaintiff might properly be included by the defendant in his answer in a suit for a declaratory decree under G. L. (Ter. Ed.) c. 231A as to the rights of the parties under the contract.    [441]

A finding that a corporation which had employed one as fruit buyer for its chain of markets for a term of eight years at a substantial weekly

salary was not justified in discharging the employee some two years later and thereby broke the contract was warranted by evidence that he was also a principal stockholder, a director and an officer of the corporation, and that after he had been absent from work because of heart trouble for about three months, during which the corporation paid his salary, the discharge occurred notwithstanding an attempt by · him to resume work. [442]

An oral agreement by an employer to pay for gasoline, oil and repairs for an employee's automobile throughout the period fixed by a written contract of employment between them, which was eight years, was unenforceable by reason of the statute of frauds, G. L. (Ter. Ed.) c. 259, § 1, Fifth. [443]

Error in a refusal of a trial judge to give a requested instruction to the jury was not shown where the charge was not before this court. [443]

At a trial in which the decisive issue was whether or not a corporation in which three brothers and their brother-in-law were stockholders, directors and officers was justified in terminating a contract of employment between the brother-in-law and the corporation, there was no reversible error in the admission in evidence of various incidents which took place at directors' meetings of the corporation on the question of bias on the part of the brothers against their brother-in-law and alleged insubordination on his part. [444]

Where an issue not properly pleaded in the answer in a suit in equity was tried without objection, the defendant was given leave to apply to the trial court for an amendment to make the answer conform to the proof; a final decree in his favor to be affirmed if such amendment were allowed. [444, 445]

BILL IN EQUITY, filed in the Superior Court on February 10, 1953.

A demurrer by the plaintiff to a counterclaim filed by the defendant was overruled by *Meagher*, J. Issues framed for a jury were tried before *Broadhurst*, J. A final decree was entered by order of *Leary*, J., (1) that the plaintiff was indebted to the defendant in the sum of $51,500 for breach of a written contract of employment; (2) that the plaintiff was indebted to the defendant in the sum of $2,500 for breach of an oral contract to pay for gasoline, oil and repairs for the defendant's automobile; (3) that the plaintiff pay the defendant a total sum of $54,000. The plaintiff appealed from the interlocutory decrees overruling its demurrer and framing jury issues, and from the final decree; and alleged exceptions saved at the trial of the jury issues and to the denial of a motion for a new trial of the issues.

*Joseph Swirsky,* for the plaintiff.

*Alfred Bettigole,* for the defendant.

SPALDING, J.   Growers Outlet, Inc., hereinafter called
Growers, began this litigation with a bill for a declaratory
decree to determine the rights of the parties under a written
contract of employment.   The defendant, hereinafter called
Stone, filed an answer which included a counterclaim.   Un-
der the counterclaim Stone sought affirmative relief by way
of damages for Growers' alleged breach of the contract of
employment.   Growers demurred to the counterclaim and
the demurrer was overruled.

Thereafter, on Stone's motion, issues for a jury were
framed and the case was tried on those issues.   As a result
of the answers returned by the jury a decree was entered
under which Stone was awarded $51,500 for Growers' breach
of the employment contract and $2,500 for its breach of
an oral agreement.[1]   The questions to be decided are
brought here partly on a bill of exceptions and partly by
appeal.   See G. L. (Ter. Ed.) c. 231, §§ 113, 144; *Dorr* v.
*Tremont National Bank,* 128 Mass. 349, 357; *Flint* v. *Cod-
man,* 247 Mass. 463, 468.

Facts which could have been found are these.   Growers
operates a chain of seven supermarkets in Springfield,
Holyoke, Northampton, and Greenfield.   The stock of
Growers is owned by Irving Feinstein, Jacob Feinstein,
Abraham Feinstein, and Stone.   The three Feinsteins are
brothers, and Stone is the husband of their sister.   All the
Feinsteins are directors of Growers, as is also Stone.   Irving
is the president and general manager of Growers, and Jacob
and Stone are the treasurer and clerk respectively.   Since
1941 Stone had been Growers' fruit buyer and all of the
fruit departments of the chain were under his supervision.
Prior to March 21, 1951, there had been litigation between
Stone and the Feinsteins, but on that date it was settled.
Pursuant to the terms of the settlement, Stone executed

---

[1] The jury found that Stone's damages for breach of the oral agreement
were $6,000, but the judge ordered a remittitur in the amount of $3,500 and
Stone remitted this amount.

the necessary papers and releases to put an end to the proceedings he had commenced against the Feinsteins. In addition, Growers, the Feinsteins, and Stone entered into a written contract whereby Stone was employed by Growers as its fruit buyer for a period of eight years from October 6, 1950, at a salary of $250 per week. After this agreement was executed Stone and Irving, Growers' president, discussed the question of reimbursing Stone for sums expended by him for gasoline, oil, and repairs for his automobile. The terms of the agreement finally entered into by Stone and Growers were oral and are in dispute, but it could have been found that Growers agreed to pay for these items throughout the period of the contract of employment. Growers paid for these items from March 21, 1951, to January 30, 1953, at which time it refused to make further payments.

On October 26, 1952, Stone suffered a severe heart attack and was taken to a hospital where he remained until December 20, 1952. Thereafter he was confined to his home until January 19, 1953, when he attended the annual stockholders' meeting of Growers. From the commencement of his illness to and including January 23, 1953, Stone was paid his weekly salary by Growers. On January 30 when Stone's son called at Growers to get his father's salary he was told by Irving that "there would be no more pay." On February 2 Stone attempted to resume his duties with Growers but Irving told him that he was "all through." Stone attempted to obtain similar employment but was unsuccessful. On May 4 he went to work for a corporation as buyer of cosmetics at a salary of $110 per week.

1. Growers argues that the judge below erred in overruling its demurrer to Stone's answer and counterclaim. One of the grounds for this contention is that prior to the bringing of the counterclaim by Stone an interlocutory decree had been entered enjoining Stone from bringing or prosecuting any proceeding against Growers for breach of contract, and this was one of the grounds set up in the demurrer. There was no error. By overruling the demurrer the judge im-

pliedly revoked the injunction and thus allowed Stone to secure an adjudication of his rights in the same proceeding. See *Lowell Bar Association* v. *Loeb*, 315 Mass. 176, 188.

The further contention is made that a counterclaim is not permissible in declaratory judgment proceedings. We do not agree. We find nothing in our declaratory judgment statute (G. L. [Ter. Ed.] c. 231A, inserted by St. 1945, c. 582, § 1) that lends any support to this contention, and we are not disposed to read it in by implication. By § 9 the act is declared to be remedial and is to receive a liberal construction. We think it was entirely proper to permit Stone to include a counterclaim in his answer so that all matters arising out of the controversy could be settled in one proceeding. This conclusion finds support in other jurisdictions where the question has arisen. *Home Ins. Co.* v. *Trotter*, 130 Fed. (2d) 800 (C. C. A. 8). *High Splint Coal Co.* v. *District No. 19, United Mine Workers of America*, 300 Ky. 521. *Gray* v. *Defa*, 103 Utah, 339. See 62 Harv. L. Rev. 787, 828; Anderson, Declaratory Judgments, § 384; 155 A. L. R. 495, 507–508.

2. The following issues were framed and submitted to the jury: "1. Was there a breach of the contract between Growers Outlet, Inc., and Henry E. Stone? 2. If there was a breach of contract who committed the breach? 3 (a) If you find that Growers Outlet, Inc., breached the contract what damages do you assess against it, with reference to a breach of contract of employment? 3 (b) If you find that Growers Outlet, Inc., breached the contract what damages do you assess against it with reference to a breach, if one is found, of the oral contract to pay for maintenance of automobile?" The jury answered the questions thus: Issue 1, Yes; issue 2, Growers Outlet, Inc.; issue 3 (a), $51,500 on the written contract; and issue 3 (b), $6,000 on the oral contract.

At the close of the evidence Growers presented a motion which in substance asked the judge to direct the jury to bring in answers that there was no breach of the contract by Growers. This motion was denied, subject to Growers'

exception.  In support of its exception Growers argues that as matter of law Stone's illness gave it the right to terminate the employment contract.  As authority for this position Growers relies on the case of *Johnson* v. *Walker*, 155 Mass. 253.  There the plaintiff Johnson was hired for the term of one year as foreman of the defendant's shoe shop.  Johnson, after working for nine months, became ill with typhoid fever, as a result of which he was absent from work for about seven weeks and during that time had no communication with his employers.  When, on his recovery, he offered to resume work he was told that he had been discharged and that another had been hired in his place.  Waiving any claim for salary for the period of his illness, Johnson brought an action for the salary allegedly due him under the contract for the balance of the year.  At the request of the defendants the judge ruled that as matter of law the plaintiff could not recover and ordered a verdict for the defendants, and this action was sustained by this court on exceptions.

The present case is distinguishable.  Here Stone had a contract which was to run for eight years.  He was a principal stockholder, a director and officer of Growers.  There was evidence that Growers had knowledge of the nature of Stone's illness and of the progress of his recovery.  To and including January 23, 1953, a period of about three months, Growers paid Stone the salary called for by the contract. In view of the fact that the term of contract was of considerable length (eight times that in the *Johnson* case) plus the fact that the employee had other ties to the corporation, the question whether Growers was justified in terminating the contract was one of fact and was properly submitted to the jury.  In determining that issue the jury could properly consider the duration and nature of the illness, *Fahey* v. *Kennedy*, 230 App. Div. (N. Y.) 156, the length of the period of employment, *Loates* v. *Maple*, 88 L. T. (N.S.) 288, the type of services being rendered, and whether they could reasonably have been substantially performed for a time by another.  *Citizens Home Ins. Co.*

*Inc.* v. *Glisson*, 191 Va. 582. *Storey* v. *Fulham Steel Works Co.* 24 T. L. R. 89.

3. As a defence to the oral agreement to pay for gasoline, oil, and repairs for Stone's automobile Growers set up that part of the statute of frauds which requires a writing with respect to an agreement "that is not to be performed within one year from the making thereof." G. L. (Ter. Ed.) c. 259, § 1, Fifth. Growers excepted to the judge's denial of its motion to direct the jury to return an answer in its favor by reason of the statute of frauds. This exception must be sustained. On the evidence most favorable to Stone the agreement with respect to these items was entirely oral and was to run for the period of the employment contract. It was thus an agreement which could not be performed within a year and came within the statute. *Hill* v. *Hooper*, 1 Gray, 131. *Doyle* v. *Dixon*, 97 Mass. 208. *Williams* v. *Pittsfield Lime & Stone Co.* 258 Mass. 65, 69. See *Marble* v. *Clinton*, 298 Mass. 87, 89–90. There is nothing in Stone's argument that Growers is estopped to set up the statute.

4. Growers excepted to the judge's refusal to instruct the jury that "In computing damages, [the] jury should give credit for interest on anticipated payments of . . . [Stone's] weekly wages." The charge is not before us and there is nothing to show what instructions were given to the jury on the question of damages. It is familiar law that it is not error for a judge to fail to instruct in the terms of a requested instruction — even if correct as matter of law — if the subject matter thereof is dealt with adequately in the charge. *Squires* v. *Fraska*, 301 Mass. 474, 476. We assume without deciding that Growers was entitled to have the jury given this instruction in substance. See *Hollwedel* v. *Duffy-Mott Co. Inc.* 263 N. Y. 95; *Stearns* v. *Lake Shore & Michigan Southern Railway*, 112 Mich. 651; *Puller* v. *Royal Casualty Co.* 271 Mo. 369; 90 A. L. R. 1318. But for aught that appears the jury may have been so instructed. Where the charge is not reported we must assume that correct instructions were given upon all issues presented.

Growers as the excepting party had the burden of showing error and this it has failed to do. *Quincy* v. *Wilson,* 305 Mass. 229, 231.

ɪ 5. Evidence was admitted subject to Growers' exceptions as to various incidents which took place at directors' meetings of the corporation. For the most part these consisted of acrimonious disputes between the Feinsteins and Stone. It is argued by Growers that this evidence was not relevant to the issues being tried. While this evidence does not appear to have very much bearing on the principal issue it was admissible, we think, to show bias on the part of the Feinsteins and also on the issue of Stone's alleged insubordination, a reason put forward by Growers as justification for terminating the contract. We find no reversible error.

6. It appeared that one of the questions submitted to the jury was that of waiver and it does not appear that there was any objection to this on the part of Growers. Growers now argues that this question was not open because not pleaded by Stone. It is true that ordinarily this is a matter which must be put in issue by the pleadings. *Niagara Fire Ins. Co.* v. *Lowell Trucking Corp.* 316 Mass. 652. But since the case seems to have been tried in part, at least, on this question there ought not to be a reversal because of a defect of pleading. *Sacks* v. *Martin Equipment Corp., ante,* 274, 281. Accordingly Stone ought to be given an opportunity to amend his answer, as hereinafter provided.

7. Finally, it is urged that the judge erred in denying Growers' motion for a new trial on the ground that the damages were excessive. The governing principles of law have been fully set forth in *Bartley* v. *Phillips,* 317 Mass. 35, and need not be restated. For present purposes it is enough to say that the award of damages cannot be said to be "'greatly disproportionate to the injury proved.'" *Bartley* v. *Phillips,* at page 41. There was no error.

8. We have considered all of the questions argued by Growers and have dealt with such of them as require discussion.

The exceptions are sustained. The final decree is modified by striking out paragraphs 2 and 3. Paragraph 1 of the final decree is modified by adding a provision that Growers be ordered to pay to Stone the amount ($51,500) adjudged to be due him. Stone is given leave, if so advised, within sixty days after the date of rescript to apply to the Superior Court for an appropriate amendment on the matter of waiver so that the pleadings will conform to the proof; if such amendment is allowed then so much of the final decree as is contained in paragraph 1, as so modified, is affirmed with costs; otherwise the final decree is reversed and a new decree is to be entered dismissing the counterclaim with costs. The interlocutory decrees are affirmed.

*So ordered.*